# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **JOSHUA COLDIRON** : | |
| 307 Pearl St. Ap. 1 : | |
| Reading, Ohio 45215 : | |
| : | **Case No.:** 1:20-cv-746 |
| : | |
| **Plaintiff,** : | |
| : | **Judge** |
| v. : | |
| : | |
| **MODFIT CORP.** : | |
| Statutory Agent : | |
| CT Corporation System : | |
| 4400 Easton Commons Way : | |
| Suite 125 : | |
| Columbus, Ohio 43219 : | |
| : | **Jury Demand Endorsed Hereon** |
| **Defendant.** : | |
| : | |

## COMPLAINT

NOW COMES Plaintiff Josh Coldiron ("Plaintiff") and proffers this Complaint for damages against Defendant Modfit Corp. d/b/a Anytime Fitness ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111"), and O.R.C. 4112 *et seq.*

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the law of the United States and over actions to secure equitable and other relief.

3. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391 because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio and performed his job duties predominately there and Defendant is doing and have done substantial business in the Southern District of Ohio.

## THE PARTIES

5. Plaintiff Josh Coldiron is an individual, a United States citizen, and a resident of the state of Ohio.

6. At all times relevant herein, Plaintiff was an "employee" of Defendant as that term is defined in the FLSA, O.R.C. Chapter 4111, and O.R.C. 4112 *et seq.*

7. Defendant Modfit Corp. is an Ohio corporation doing business in the Southern District of Ohio.

8. At all times relevant herein, Defendant was a covered "employer" as that term is defined in the FLSA, O.R.C. Chapter 4111, and O.R.C. 4112 *et seq.*

9. At all times relevant to this action, Defendant was engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendant constituted an enterprise engaged in commerce within the meaning of the FLSA.

## FACTUAL BACKGROUND

10. Plaintiff began working for Defendant on or about June 12, 2019.

11. Plaintiff worked at Defendant's Maineville, Ohio location as a personal trainer/health coach.

12. Plaintiff's main job duties while working for Defendant were to conduct personal and group training sessions, as well as keep the facility clean.

13. Plaintiff was supervised by Brandon Rayl throughout Plaintiff's employment.

14. At the time Defendant hired Plaintiff, Mr. Rayl advised Plaintiff that Defendant would pay Plaintiff a weekly salary and commissions based upon membership sales and personal training sales.

15. At the time Plaintiff started his employment, Mr. Rayl scheduled Plaintiff to work Monday through Thursday and on Saturday.

16. Mr. Rayl advised Plaintiff that Plaintiff would conduct a personal training session on Mondays and Wednesdays that started at 9:00 a.m. Mr. Rayl also advised Plaintiff that Plaintiff would conduct a half-hour personal training session on Mondays that started at 6:30 p.m. and a half-hour personal training session on Wednesdays that started anywhere between 6:30 p.m. and 7:30 p.m. Plaintiff's personal training sessions on Wednesday evenings were for a nurse whose scheduled varied from week to week. Given that the nurse was one of Defendant's valued members, Mr. Rayl informed Plaintiff that he had to stay at the facility as late as necessary to conduct the personal training sessions for the valued member.

17. Mr. Rayl advised Plaintiff that Plaintiff would conduct a group class on Tuesdays and Thursdays that started at 9:00 a.m. Mr. Rayl also advised Plaintiff that Plaintiff would conduct an hour-long group class on Tuesdays and Thursdays that started at 6:30 p.m.

18. Mr. Rayl advised Plaintiff that Plaintiff had to work for Defendant on Saturdays from 10:00 a.m. to 2:00 p.m.

19. A few weeks after Plaintiff started his employment, Mr. Rayl advised Plaintiff that Plaintiff was required to work additional hours each week.

20. Mr. Rayl advised Plaintiff that Plaintiff had to conduct a personal training session on Fridays that started at 9:00 a.m. Mr. Rayl further advised Plaintiff that Plaintiff was to continue

working on Fridays until 4:00 p.m., after Plaintiff finished the 9:00 a.m. personal training session that day.

21. Mr. Rayl advised Plaintiff that Plaintiff had to conduct a personal training session on Saturdays that started at 9:00 a.m.

22. At the time of Plaintiff's hire, Mr. Rayl advised Plaintiff that the first thing Plaintiff had to do when he arrived at Defendant's facility each day was to conduct a daily walk-through. Mr. Rayl informed Plaintiff that Plaintiff had to complete a check-list of tasks during the daily walk-through, such as taking out the trash in the bathrooms. The daily walk-through took Plaintiff about 30 minutes to conduct each day.

23. At the time of Plaintiff's hire, Mr. Rayl advised Plaintiff that Plaintiff was required to get all of the equipment out prior to a group class starting so the class could begin at the time the class was scheduled to start. Defendant provided Plaintiff templates for the group classes that required the class members to use equipment, such as kettle bells, dumb bells, mats, ropes, and more.

24. At the time of Plaintiff's hire, Mr. Rayl advised Plaintiff that Plaintiff was required to return all the equipment to the equipment's normal spot after the group class. Mr. Rayl indicated that Plaintiff had to make sure all the equipment was returned the equipment's normal spot before Plaintiff left Defendant's facility at the end of Plaintiff's workday.

25. Defendant required Plaintiff to work more than 40 hours per workweek.

26. Defendant required Plaintiff to work approximately 51 hours during the first few weeks Plaintiff worked for Defendant.

27. After the first few weeks of Plaintiff's employment, Defendant required Plaintiff to work approximately 59 hours each workweek.

4

28. Defendant required Plaintiff to work approximately 59 hours each workweek until March 12, 2020.

29. Defendant failed to pay Plaintiff premium pay for any hour over 40 hours Plaintiff worked during any workweek during Plaintiff's employment.

30. Plaintiff started at Defendant several months after two female personal trainers/health coaches, Katie Berger and Holly Frary, began working at Defendant.

31. Defendant provided a pay raise to Ms. Berger and Ms. Frary a few months after they started working at Defendant.

32. Defendant provided Ms. Berger several pay raises throughout her employment at Defendant.

33. Defendant promoted Ms. Berger to an Assistant Manager positon at Defendant.

34. On or about March 12, 2020, Mr. Rayl informed Plaintiff that Defendant was furloughing Plaintiff due to Ohio Governor Mike DeWine's Stay-at-Home order that temporarily stopped Defendant's full operations.

35. On or about May 26, 2020, Mr. Rayl informed Plaintiff that Defendant was terminating Plaintiff's employment.

### FIRST CAUSE OF ACTION
### FLSA, 29 U.S.C. §201, *et seq*. -
### Failure to Pay Overtime

36. All of the preceding paragraphs are realleged as if fully rewritten herein.

37. Plaintiff was not paid an overtime premium for all hours worked over forty in a work week for Defendant.

38. Defendant was aware that Plaintiff was working significantly more than 40 hours per week, but was not receiving overtime compensation for hours worked in excess of 40 per week.

39.   Defendant knew or should have known it was required to pay Plaintiff federal overtime pay.

40.   Accordingly, Plaintiff was forced to work for Defendants since June 2019 without receiving federal overtime premiums.  As a result, Plaintiff has been damaged.

## SECOND CAUSE OF ACTION
### OMFWSA R.C. 4111, *et seq.* - Failure to Pay Overtime

41.   All of the preceding paragraphs are realleged as if fully rewritten herein.

42.   This claim is brought under Ohio Law.

43.   Defendan's repeated and knowing failure to pay Plaintiff Ohio overtime wages for hours worked in excess of forty (40) per week, was a violation of Section 4111.03 of the Ohio Revised Code.

44.   For the Defendant's violation of O.R.C. 4111.03, Plaintiff is entitled to recover unpaid wages, liquidated damages, interest, attorney's fees, and all other remedies available under Ohio law.

## THIRD CAUSE OF ACTION
### O.R.C. 4113.15

45.   All of the preceding paragraphs are realleged as if fully rewritten herein.

46.   O.R.C. 4113.15 requires that Defendant pay Plaintiff all wages owed, on or before the first (1st) day of each month for wages earned by him during the first (1st) half of the preceding month ending with the fifteenth (15th) day thereof, and, on or before the fifteenth (15th) day of each month, for wages earned by him during the preceding calendar month.  See O.R.C. § 4113.15(A).

47. During all times material to this Complaint, because of Defendant's failure to compensate Plaintiff fully and properly for all work performed, Plaintiff was not paid all wages earned within thirty (30) days of performing the work. See O.R.C. 4113.15(B).

48. Plaintiff's earned overtime wages remain unpaid for more than thirty (30) days beyond his regularly scheduled payday.

49. In violating O.R.C. 4113.15, Defendant has acted willfully and with reckless disregard

## FOURTH CAUSE OF ACTION
### O.R.C. 4112, *et seq.* –
### Unlawful Sex Discrimination

50. All of the preceding paragraphs are realleged as if fully rewritten herein.

51. Plaintiff was qualified to do his job, as he had been performing his job duties for approximately a year before he was terminated.

52. Defendant unlawfully discriminated against Plaintiff by, among other things, failing to provide him a wage increase, failing to provide him a promotion, and terminating his employment due to his sex.

53. Defendant's decisions toward Plaintiff were discriminatory due to Plaintiff's sex because, among other reasons, Defendant treated Plaintiff less favorably than similarly-situated female employees.

54. As a result of Defendant's unlawful sex discrimination of Plaintiff, he has suffered damages, including economic damages, mental anguish, and additional pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks an award against Defendant in an amount equal to the liability, losses, damages, liquidated damages, punitive damages, attorney's fees, costs, expenses and any other amounts available under the law incurred by Plaintiff for Defendant's violations.

        Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196), Trial Attorney
**GIBSON LAW, LLC**
9200 Montgomery Rd., Suite 11A
Cincinnati, OH 45242
(brad@gibsonemploymentlaw.com)
Ph:  (513) 834-8254

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)